UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

                                       File No. 1:11-CR-260

v.

                                       HON. PAUL L. MALONEY

JACK ALAN GROENENDAL,

        Defendant.

_____/

**OPINION**

       Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (ECF No. 155) and supplements thereto (ECF Nos. 153, 160, 221), filed by Defendant Jack Alan Groenendal. The Government has filed a response to the motion, arguing that the grounds for relief are meritless and/or procedurally defaulted. Defendant has filed a reply. After considering the record and the parties' arguments, the Court finds that the motion is meritless. Accordingly, the Court will deny it.

## I. Background

       In September 2011, a grand jury returned an indictment charging Defendant with two offenses: attempted receipt of child pornography, and attempted possession of child pornography. In a second superseding indictment returned in June 2013, the Government charged Defendant with attempted receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and attempted access with intent to view child pornography, in violation of 18 U.S.C. § 2254(a)(4)(B). (*See* ECF No. 81.)

The charges against Defendant stemmed from internet searches that he performed on his home computer in the summer of 2011.  Using the image search feature on the Bing internet search engine, Defendant repeatedly entered a variety of search terms (over 140 in all) in order to generate thumbnail images of child pornography in the search results.  Those search terms included the following:  "little ones," "peach fuzz," "the teachers assistant," "girlsspotting," "trolling for girls," "naughty gym class," "throaty little whores," "bathroom girls," "cutiepiedolls," "boytoy," "girlswithoutclothes," and "cutecut."  Defendant also entered the following:  the name of a Russian website that is a common source of child pornography; well-known pseudonyms for victims of child pornography; and the names of child actresses whose faces are often pasted onto sexually explicit images of children.

Defendant had a history of seeking out child pornography.  In 2007, he pleaded guilty to possession of child pornography after authorities discovered that he sent sexually explicit images of children to a Yahoo group.  (*See United States v. Groenendal*, No. 1:07-cr-93 (W.D. Mich.), Plea Hr'g Tr. 39-40, ECF No. 33.)  For that conviction, the Court sentenced him to 42 months in prison and 3 years of supervised release.  Defendant was serving the supervised release portion of that sentence when he conducted the internet searches described above.

The conditions of Defendant's supervised release prohibited him from possessing pornography.  Also, he had to obtain permission to access the internet.  Defendant's probation officer, Rhonda Wallock, gave him permission to access a handful of websites from his work computer so that he could perform his job.  She also gave him unrestricted access to the internet from his home computer, provided that he pay for and install monitoring software on that computer.  (Trial Tr. I at 89, ECF No. 126.)

In August 2011, Officer Wallock learned about Defendant's illicit behavior from reports generated by the monitoring software.  These reports, which Wallock received by email, showed the URLs that Defendant accessed and the search terms that he used.  The software also sent information to an online portal that Wallock could access.  At the portal, Wallock found screen shots of Defendant's search activity and links that essentially replicated Defendant's searches; in other words, the links led to live search results for the searches Defendant had conducted a week or so earlier.  Wallock initially believed that these links led to additional screen shots of Defendant's computer, but she later learned that the links led to live search results that were similar to the results that Defendant would have received.

Special Agent Blair Babcock, a computer forensics investigator, assisted Wallock with reviewing the information gleaned by the monitoring software.  (Trial Tr. II at 221-22, ECF No. 127.)  According to Babcock's testimony at trial, that information showed that Defendant initiated searches using the terms mentioned above, and then scrolled through pages and pages of results from those searches.  (*Id.* at 225.)  And on at least one occasion, Defendant hovered over a search result with the pointer of his mouse, causing a pornographic image to enlarge on his screen.  (*Id.* at 226.)

After discovering the troubling internet activity by Defendant, Wallock had his computer seized and then examined by Agent Babcock.  Babcock's examination uncovered multiple images of adult pornography and seven images of child pornography on the computer's hard drive, located in the folder used for temporary storage of images downloaded by the internet browser.  The screen shots of Defendant's computer did not show any child pornography, but the images stored on his computer confirmed that his search results had contained child pornography.

3

When Defendant testified at his trial in October 2013, he acknowledged that he conducted the searches mentioned above. (*Id.* at 366.) He also acknowledged that his search results led to pornography, but he denied having any intent to access or receive child pornography. He noted that he never clicked on any links in the search results. (*Id.* at 387.) And he contended that he thought his home computer had a filter that would prevent him from obtaining child pornography.

To justify the searches, Defendant claimed that they were part of his "homework" for a court-mandated therapy program for sex offenders. (*Id.* at 372.) The workbook for this therapy program told him to "identify" his "destruction warning line," which is the "last kinds of thoughts, feelings, [and] behaviors that would be an indicator that [Defendant] is at extremely high risk to have a re-offense[.]" (Trial Tr. III at 466, ECF No. 128.) The workbook also told him to establish a "plan" to avoid this warning line. Defendant claimed that he interpreted these instructions to mean that he had to bring himself up to his warning line and then practice his avoidance plan. (Trial Tr. II at 377, 381-83.) Defendant decided that his warning line—his last act before possessing child pornography—was conducting searches on Bing using "deviant"[1] search terms, but not clicking on any of the images in the search results. (*Id.* at 387, 395, 417.) His avoidance plan was to "pray" with his eyes closed and to not look at the images on the screen, and he claimed that is what he did, most of the time. (*Id.* at 384, 405, 421-23.) He admitted to scrolling through multiple pages of search results, but he claimed that his eyes were closed *and* that he focused his attention on the scrollbar at the edge of the screen instead of the images. (*Id.* at 421-22.) On the other hand, he acknowledged seeing terms like "cutecut" and "hard on myself" underneath pornographic images in his search results, and then using those terms to conduct further searches. (*Id.* at 404, 408.)

---

[1] Defendant distinguished "deviant" pornography from "legal" pornography, and classified child pornography as a type of "deviant" pornography. (Trial Tr. II at 371.)

4

The instructor for Defendant's therapy program testified that he disagreed with Defendant's interpretation of the therapy workbook. The purpose of the workbook exercise was to *identify* the warning line and learn to stay away from it. The exercise did not encourage engaging in behavior that could lead up to that line. (Trial Tr. III at 466-67.)

Obviously, the jury did not accept Defendant's explanations. It found him guilty of both offenses. The Court then found Defendant guilty of violating the terms of his supervised release. The Court sentenced him to 15 years in prison for the attempted receipt conviction and 10 years for the attempted access conviction, to be served concurrently. The new sentence runs consecutive to an 18-month term for Defendant's supervised release violation.

Defendant appealed his conviction and the revocation of his supervised release with the assistance of attorney Paul J. Neel. Defendant raised the following issues on appeal: (1) the evidence was insufficient to convict because it did not show that Defendant intended to commit the charged offenses; (2) Babcock testified about technical matters despite that fact that he was not qualified as an expert; and (3) without a valid conviction, the Court should not have revoked Defendant's supervised release.

The Court of Appeals for the Sixth Circuit affirmed Defendant's conviction and the revocation of his supervised release in an order entered on April 27, 2015. *See United States v. Groenendal*, No. 14-1143/1148 (6th Cir. Apr. 27, 2015), available at ECF No. 132. The Court of Appeals determined that Defendant's arguments regarding the sufficiency of evidence "simply reiterate his claim that the jury rejected at trial, i.e., that his only intent in conducting the searches was to comply with the instructions in his workbook and to complete his homework." *Id.* at PageID.1436. The Court of Appeals rejected his theory that he was not guilty because he only accessed thumbnail images of child pornography and did not save them to his hard drive. *Id.*

Unlike the defendant in another case who was charged with a different offense, and who accessed thumbnail images on only one occasion, nine months before those images were discovered on his hard drive, Defendant "accessed thumbnail images of child pornography on multiple occasions over a period of several weeks, searched for these images, and manipulated them to enable his viewing of the images on his computer screen." *Id.* at PageID.1437.

The Court of Appeals also rejected Defendant's challenge to the testimony of Babcock, finding that this Court "followed the proper procedure for admitting opinion testimony" and gave proper cautionary instructions to the jury. *Id.*

Finally, the Court of Appeals rejected Defendant's challenge to the revocation of his supervised release because his general assertion of error in his conviction was not adequate to preserve an appeal from the revocation of his supervised release. *Id.* at PageID.1438. The Court of Appeals also noted that a lower standard of proof applies in revocation proceedings, and that the Federal Rules of Evidence do not apply to revocation. Consequently, his challenges to his conviction did not apply to the revocation of his supervised release.

Defendant attempted to file a petition for a rehearing en banc, but his request was untimely. He did not petition for certiorari to the Supreme Court.

Defendant now raises various grounds for relief in his motion under § 2255 and in supplements thereto.[2] The Government claims that Defendant's grounds for relief are either meritless or procedurally defaulted or both. The Court will deny Defendant's motion because the grounds for relief are plainly meritless.

---

[2] The Court will grant Defendant's motions to file amended/supplemental pleadings (*see* ECF Nos. 153, 221), and accepts the additional arguments and evidence Defendant offers therein as supplements to his other filings.

## II. Standards

### A. Merits

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

### B. Evidentiary Hearing

The court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

## C. Procedural Default

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

## III. Analysis

### <u>Ground One:</u> Ineffective Assistance of Appellate Counsel

Defendant claims that his appellate attorney was ineffective for failing to raise a number of issues. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. A defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687-88.

Under the first prong of the *Strickland* standard, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of

the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

When filing an appeal, counsel is not required to "raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Appellate counsel may reasonably decide that selecting only some of the possible nonfrivolous claims will "maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). Counsel's judgment is "presumed to be effective unless the ignored issues are clearly stronger than those presented." *Sullivan v. United States*, 587 F. App'x 935, 944 (6th Cir. 2014). Thus, when a claim is based on an attorney's failure to raise a particular issue on appeal, "it is difficult to demonstrate that counsel was incompetent." *Robbins*, 528 U.S. at 288.

Even if counsel's conduct was deficient, Defendant must also show that this deficiency prejudiced him. In other words, Defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of an appeal, that means Defendant must show "a reasonable probability that, but for his counsel's [deficient conduct], [Defendant] would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.

Defendant's attorney on appeal, Paul J. Neel, raised the three issues mentioned above. For the reasons discussed below, Defendant has not shown that Neel provided ineffective assistance. Defendant has not identified an issue that is "clearly stronger" than the ones presented on appeal.

In addition, he has not shown that there is a reasonable probability that the result of his appeal would have been different if Neel had raised any of the issues presented in his motion.

### A.  Issue 1:[3] Withholding favorable evidence

Defendant apparently claims that either the Government or his own attorney withheld evidence from Defendant, thereby preventing him from "explaining his theory of the case" with his lawyers and investigators.  (Def.'s Mem. in Supp. of § 2255 Mot., ECF No. 156, PageID.1731.)

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the Government must disclose favorable, material evidence to the defense.  *Id.* at 87.  A *Brady* claim contains three elements: (1)  evidence that is "favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) willful or inadvertent suppression of that evidence by the Government; and (3) the evidence is material, meaning "prejudice must have ensued" from its suppression.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  A defendant is prejudiced "if there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Defendant's assertions do not rise to the level of a *Brady* violation because he does not identify any favorable evidence withheld by the Government, let alone evidence that is material to his defense.  For instance, Defendant refers to an "offending photo" in the evidence that he "never viewed" but that the Government accused him of attempting to receive or view.  (Def.'s Mem., PageID.1731.)  He also refers to the images that the Government discovered on his hard drive. Defendant contends that the Government misled the jury by telling them that Defendant had viewed these images when, in fact, his computer automatically downloaded the images and saved

---

[3] Defendant's motion under § 2255 (ECF No. 155) contains a numbered list of issues that his attorney should have raised on appeal.  The Court will use that numbering when identifying the issues in Ground One.

them to his hard drive.  (*Id.*)  He also contends that there is no evidence that any of the images from his hard drive appeared in a screen shot or that he hovered over them with his mouse, causing them to enlarge.

The images and screen shots to which Defendant refers are not favorable evidence, and obviously the Government did not suppress them because it presented them at trial.  The Government also told the jury, through the testimony of Agent Babcock, that Defendant's computer automatically stored some of the images from his searches in the temporary storage folder; Defendant did not click on those images or tell the computer to save them.  (*See* Trial Tr. II at 274-75.)  Thus, the jury was aware of the source of those images.  Moreover, Defendant had an ample opportunity to present his defense.  He told the jury that he did not view the images discovered on his computer, or any other images of child pornography that resulted from his internet searches.  He does not point to any evidence, let alone evidence withheld by the Government, that would have aided the presentation of his defense.

Defendant insists that there is no evidence that he viewed any of the images of child pornography.  As for the images on Defendant's hard drive, however, Agent Babcock testified that, while it is possible for a user not to see images that are automatically saved to the folder designated for temporary internet files (Trial Tr. II at 278), Defendant almost certainly would have seen at least one of the seven images of child pornography recovered from his hard drive because one of those images was the very first search result for a search that Defendant performed on his computer (*id.* at 300).[4]  And Babcock was "fairly certain" that Defendant saw another one of those seven images because it was the fourth search result for a different search.  (*Id.* at 333.)

---

[4] Babcock conducted the same search approximately one week after Defendant did.

Babcock also presented evidence that Defendant viewed other images in his search results because Defendant gleaned many of his search phrases from those results. (*Id.* at 304-05.) For instance, a screen shot from the monitoring software showed that Defendant conducted a search that returned a pornographic image tagged with the phrase "hard on myself"; eight seconds later, Defendant searched for "hard on myself." (*Id.*) In addition, the "hard on myself" image was larger than the other ones on the screen, indicating that Defendant's mouse pointer was hovering over the image. (*Id.* at 226.) As discussed in more detail below, the Government did not have to prove that Defendant actually viewed any child pornography. Nevertheless, there is circumstantial evidence that he did so.

Defendant apparently believes that the Government could not prove its case because the images of child pornography stored on his computer were not "captured" in the screen shots of his computer screen. (Def.'s Mem., PageID.1732.) He is mistaken. Screen shots are, by definition, simply images of Defendant's computer screen at particular points in time. (*See* Trial Tr. II at 226 ("[A] screen shot is a photograph of the actual display as it was displayed on the computer at the time.").) They are not a record of everything that ever appeared on Defendant's computer screen. The images stored on Defendant's computer clearly came from the internet searches that he conducted through his browser. No one else was responsible for them. The absence of those images in the screen shots does not mean they never appeared on his screen. A jury looking at all the evidence could reasonably conclude that they appeared on his screen, and that Defendant actually saw them, for all the reasons stated by Agent Babcock. More importantly, a jury could infer from Defendant's search phrases, as well as Defendant's own testimony, that Defendant intentionally sought child pornography and, thus, attempted to receive and access that pornography with the intent to view it.

In short, Defendant does not point to any favorable evidence suppressed by the Government suggesting that he did not intend to receive, access, or view child pornography. Indeed, the jury received all the evidence that Defendant claims is favorable to him. Thus, he has not established a crucial element of a *Brady* claim.

In effect, Defendant is attempting to relitigate the evidence against him, but his motion under § 2255 is not the place for doing so. He raised that challenge on appeal and failed. The Court of Appeals found that there was sufficient evidence to convict him of the charged crimes. "[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). Defendant does not allege any exceptional circumstances here.

### B. Issue 2: Improper jury instructions

Defendant asserts that his appellate attorney failed to raise the issue of "improper jury instructions." (§ 2255 Mot., ECF No. 155, PageID.1710.) He contends that the jury instructions failed to address the following: (1) double jeopardy; (2) "2252's affirmative defense of 'less than 3 illegal images'"; (3) entrapment; and (4) "the correct explanation for the 'knowingly' element of both crimes." (*Id.*)

Defendant's trial attorney did not object to the instructions, so the Court of Appeals would have reviewed the instructions for "plain error." *United States v. Harvey*, 653 F.3d 388, 395 (6th Cir. 2011). "To show plain error, 'there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights.'" *United States v. Davis*, 514 F.3d 596, 615 (6th Cir. 2008) (quoting *United States v. Bailey*, 488 F.3d 363, 368 (6th Cir. 2007)) (internal quotation marks omitted). "Generally, an error does not affect substantial rights unless it is prejudicial—in other words, the error 'must

have affected the outcome of the district court proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

"In the context of challenges to jury instructions, '[p]lain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'" *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (quoting *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994)). "Reversal is only proper 'if the instructions, viewed as a whole, were confusing, misleading, or prejudicial,' and 'the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings[.]'" *United States v. Semrau*, 693 F.3d 510, 528 (6th Cir. 2012) (citations omitted).

### 1. Double jeopardy

Defendant contends that the double jeopardy rule applies to his case because he is "100% sure of only one thumbnail yet is charged with two different crimes." (§ 2255 Mot., PageID.1710.) It is not clear what Defendant means by this, but in any event, double jeopardy is not the proper subject of jury instructions because it is not a matter for the jury to decide. It is a question of law for the Court to decide, not a question of fact for the jury. *See United States v. Farah*, 766 F.3d 599, 606 (6th Cir. 2014) ("Double jeopardy claims are questions of law[.]").

As a matter of law, Defendant's double jeopardy claim is meritless. The double jeopardy clause of the Fifth Amendment "protects criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense." *Id.* "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). In other words "'a single act may be an offense against two

14

statutes . . . if each statute requires proof of an additional fact which the other does not[.]'" *Id.* (quoting *Morey v. Commonwealth*, 108 Mass. 433 (1871)).

The two charges against Defendant did not run afoul of the double jeopardy rule because each charge required proof of a fact that the other did not.  Attempted receipt of child pornography requires proof of attempted receipt whereas attempted access does not.  As this Court explained in its jury instructions, receipt means "to take possession and control"; access does not require possession and control.  (Trial Tr. III at 514-15, ECF No. 128.)  Moreover, attempted access with intent to view requires proof of intent to view whereas attempted receipt does not.  Thus, even if both charges were based on the same image, which is not the case here because there were multiple images of child pornography on Defendant's computer, there was no double jeopardy problem.

### 2.  2252's affirmative defense

Defendant notes that 18 U.S.C. § 2252 provides an affirmative defense where the defendant "possessed less than three matters containing any visual depiction [of child pornography]" and the defendant "promptly and in good faith . . . took reasonable steps to destroy each such visual depiction [or] reported the matter to a law enforcement agency[.]"  18 U.S.C. § 2252(c).  By its terms, this defense applies only to "a charge of violating paragraph (4) of subsection (a)."  *Id.* Paragraph (a)(4) includes charges for "knowingly possess[ing], or knowingly access[ing] with intent to view"; it does not include a charge for receipt (or attempted receipt) of child pornography. *See* 18 U.S.C. § 2252(a)(4)(B).  Thus, the defense would have applied, if at all, to the charge for attempted access, not the charge for attempted receipt.

There was no reason to raise this affirmative defense at trial because there was no evidence to support it.  *Cf. Brown v. United States*, 261 F. App'x 865, 868 (6th Cir. 2008) (finding no ineffective assistance of counsel in failure to raise an affirmative defense where "there was insufficient proof as a matter of law to establish the affirmative defense").  Defendant took no

steps to destroy any child pornography on his computer or to report it to a law enforcement agency. Defendant acknowledged that he made no attempt to delete the "temporary file" on his computer because he simply assumed that his next internet search would write over that file. (Trial Tr. II at 394.) And despite that fact that he ran over a hundred searches for "deviant" pornography over a five-week period, he never told his probation officer or therapist about the pornography on his computer screen. (*Id.* at 411.) Consequently, the affirmative defense in § 2252 does not apply. For that reason, Defendant's trial attorney was not ineffective for failing to raise the defense or to request an instruction on it, and his appellate attorney was not ineffective for failing to raise the issue on appeal.

### 3. Entrapment defense

Defendant also claims that his attorney should have requested an instruction for entrapment. He apparently contends that the Government entrapped him by installing a filter on work computer to block pornography, but not installing one on his home computer.

Defendant's claim is meritless. "To establish entrapment, a defendant must establish two related elements: '(1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity.'" *United States v. Sutton*, 769 F. App'x 289, 297 (6th Cir. 2019) (quoting *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002)). "A defendant is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, but the defendant must provide enough evidence to support both elements of entrapment in order to receive the instruction." *Id.* (quoting *United States v. Demmler*, 655 F.3d 451, 456-57 (6th Cir. 2011)).

The first element, government inducement, requires "something more than merely affording an opportunity or facilities for the commission of the crime." *United States v. Poulsen*, 655 F.3d 492, 502 (6th Cir. 2011). It requires "'opportunity' *plus* something else-typically,

16

excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *United States v. Dixon*, 396 F. App'x 183, 186 (6th Cir. 2010) (quoting *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir. 1994)).

The second element, lack of predisposition, "'focuses upon whether the defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime.'" *United States v. Wilson*, 653 F. App'x 433, 438 (6th Cir. 2016) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).   Relevant factors for determining predisposition including the following:

> (1) "the character or reputation of the defendant, including any prior criminal record," (2) "whether the suggestion of the criminal activity was initially made by the Government," (3) "whether the defendant was engaged in the criminal activity for profit," (4) "whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion," and (5) "the nature of the inducement or persuasion supplied by the government."

*Id.* (quoting *Khalil*, 279 F.3d at 365).

The evidence at trial did not support either element of entrapment.  As to inducement, the Government did not suggest to Defendant that he search for child pornography.  Nor did it pressure him to do so.  Contrary to Defendant's testimony at trial, his therapy homework did not encourage him to search for child pornography.  It told him to "define" his warning line and to create a plan to *avoid* it.  (*See* Workbook, ECF No. 74-1, PageID.345, 350.)  It did not tell him to purposefully engage in behavior that put him at risk of reoffending.  Furthermore, the lack of a filter on Defendant's computer was not a form of pressure.  Indeed, even without the filter, the computer monitoring software should have dissuaded Defendant from using his computer to find "deviant" pornography.

As to predisposition, Defendant had a prior conviction for possessing child pornography. He also admitted at trial that viewing child pornography is an addiction for him.  There is no

17

evidence that the Government induced or persuaded him to overcome what little reluctance he might have had to seek out that material. He came up with that idea on his own without telling anyone about it.

In short, there was no basis for an entrapment defense. Consequently, there was no reason for his trial attorney to request an entrapment instruction or for his appellate attorney to raise the issue on appeal.

### 4. "Knowingly" element of offenses

Defendant argues that the Court did not give the "correct explanation for the 'knowingly' element" of his offenses because "[u]nviewed images cannot be known" (§ 2255 Mot., PageID.1710) and because "[n]o one can 'know' the sexually explicit nature of any image not proven as viewed" (Def.'s Mem., PageID.1735). Defendant is mistaken. The Court correctly instructed the jury that the Government had to show, among other things, that Defendant "attempted to knowingly receive" child pornography and that he "attempted to knowingly access with intent to view" child pornography. (Trial Tr. III at 514, 515.)

The Government did not have to prove that Defendant actually viewed any of the images of child pornography to prove the "knowingly" element. For instance, a person can knowingly receive child pornography without ever viewing it. *See United States v. Ford*, 568 F. App'x 477, 481 (7th Cir. 2014) (collecting cases from other circuits). Other facts may indicate that the defendant knows what he is receiving. In this case, the search terms used by Defendant, the nature of his browsing behavior, and the images he found, indicate that he knowingly received child pornography.

In addition, a person can knowingly access with intent to view child pornography without ever viewing the pornography itself. *See United States v. Tagg*, 886 F.3d 579, 587 (6th Cir. 2018) ("[E]ven if the person never viewed illegal child pornography, knowingly accessing a child-

pornography website with the intent to view illegal materials is itself a criminal act.") "'[A]ccess-with-intent liability is triggered when a person 'intentionally searche[s] for images of child pornography, f[inds] them,' but then stops short of viewing the images themselves." *Id.* (quoting *United States v. Ramos*, 685 F.3d 120, 132 (2d Cir. 2012)). Here, there is no question that Defendant intentionally searched for images of child pornography and found them.

Furthermore, this case involved attempt charges. It was one step removed from receipt and accessing with intent to view child pornography. It required the Government to prove a substantial step toward those offenses. Thus, like his other objections to the instructions, Defendant's objection to the "knowingly" element of the jury instructions is meritless. His attorneys were not ineffective for failing to raise these objections.

### C. Issues 3-5: "Reckless disregard" claims

Defendant faults Agent Babcock and the prosecutors in his case for allegedly failing to review the evidence to support the initial charges against Defendant. Defendant contends that they should have discovered that the links which Wallock and Babcock believed to be screen shots of Defendant's computer were actually live search results, and that the seven images of child pornography recovered from Defendant's computer did not appear in the actual screen shots. Defendant asserts that the investigators and prosecutors recklessly disregarded the truth regarding the nature of the evidence in their possession, and when they finally discovered their mistakes, they changed the charges against him.

Defendant apparently contends that, even if the Government did not technically suppress any evidence, it nevertheless harmed his case by delaying disclosure of the true nature of its evidence.

### 1.  Background

#### (a)  Babcock gives inaccurate testimony to the grand jury

Before the original indictment and the superseding indictment issued in September 2011 and July 2012, respectively, Agent Babcock twice testified to the grand jury that the printouts he created were screen shots of Defendant's computer.  Unlike the actual screen shots, the printouts contained images of child pornography.

#### (b)  Government informs Defendant of its mistake

In a letter dated November 18, 2012, the Government informed Defendant's counsel that Babcock and Wallock had been mistaken.  (*See* ECF No. 89-2.)  Babcock's printouts showed the results of searches that he conducted on August 16, 2011; they were not screen shots of Defendant's computer.

#### (c)  Defendant moves to dismiss the case

In June 2013, Defendant's counsel asked the Court to dismiss the charges against Defendant due to the Government's mistake.  Defendant claimed that Agent Babcock's inaccurate testimony to the grand jury was "tantamount to a *Brady* violation," and that if Defendant had been aware of the inaccuracies earlier, he would not have agreed to adjourn the original January 2012 trial date and he would not have waived his right to a speedy trial.  (Def.'s Mot. to Dismiss, ECF No. 77, PageID.426-428.)  Defendant also claimed that his attorney was ineffective for failing to raise the issue earlier.  (*Id.* at PageID.428.)

#### (d)  Grand jury returns second superseding indictment

Babcock corrected his testimony to the grand jury, and two days after Defendant filed his motion to dismiss, the grand jury returned a second superseding indictment charging Defendant with the same offenses as the previous indictment.

#### (e)  Court denies Defendant's motion

The Court denied Defendant's motion to dismiss the case for several reasons.  (*See* 6/26/2013 Order, ECF No. 90.)  First, the grand jury had returned a second superseding indictment, which mooted any deficiencies in the previous two indictments.  (*Id.* at PageID.473.)  Second, Defendant had ample time to prepare for trial after learning of the inaccuracies in Babcock's testimony, so there could not be a *Brady* violation.  Third, the record belied Defendant's assertion that he would not have waived his right to a speedy trial had he known of the inaccuracies in Babcock's testimony.  Defendant sought a continuance in January 2012 so that he could find a new attorney.  Defendant also waited many months to file his motion to dismiss after learning of the inaccuracies.  These actions did not indicate that he would have proceeded to trial in January 2012. (*Id.* at PageID.475.)  Finally, Defendant's attorney was not ineffective because Defendant's substantive claims were meritless; thus, Defendant did not show that his attorney erred or that he was prejudiced by that error.  (*Id.*)

#### (f)  Wallock and Babcock explain their mistake to the jury at trial

Officer Wallock and Agent Babcock both explained their mistake to the jury at Defendant's trial in October 2013.  For instance, Babcock explained that when he and Wallock were looking at Defendant's internet activity through the monitoring software's online portal, they found an audit report containing images of Defendant's computer screen ("screen shots") as well as links to what they initially believed were additional screen shots of Defendant's computer.  (Trial Tr. II at 223, 230-31.)  Babcock clicked on the links and saved these additional "screen shots" as PDF files.  (*Id.* at 230.)  Later, however, Babcock and Wallock learned that they were mistaken, and that these additional "screen shots" were actually live search results.  (*Id.*)

21

## 2. Analysis

Defendant challenged the initial indictments, and the Government's actions leading to those indictments, in his motion to dismiss. The Court denied that motion. Defendant's arguments fare no better this time around.

"[T]he *Brady* doctrine requires only the production of material in time for its effective use at trial." *United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994). "'[I]n general, the principles announced in *Brady* do not apply to a tardy disclosure of exculpatory information, but to a complete failure to disclose. If previously undisclosed evidence is disclosed . . . during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure.'" *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014) (quoting *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986)).

> To demonstrate the type of materiality, and, thus, prejudice necessary to establish a *Brady* violation based upon *delayed disclosure*, a defendant must show what he would have done differently had he been given more time to address the *Brady* evidence, and specifically how, had the evidence been given to the defendant earlier, a reasonable probability exists that the result of the defendant's trial would have been different.

*United States v. Spry*, 238 F. App'x 142, 147-48 (6th Cir. 2007) (emphasis added).

Defendant has not shown any prejudice to his case as a result of the inaccuracies in Babcock's testimony to the grand jury or the delayed disclosure of those inaccuracies to Defendant. He asserts that he could have impeached Wallock and Babcock at a trial in January 2012, but Defendant had ample time and opportunity to prepare for his trial in October 2013, and to challenge the testimony of Wallock and Babcock at that trial. Moreover, the jury heard about the mistakes by Wallock and Babcock. Thus, Defendant has not, and cannot, show a reasonable probability that the result of his proceedings would have been different if he had learned about those mistakes earlier.

Defendant offers no legal basis for granting relief from his conviction where, as here, the Government made a mistake in its assessment of the evidence that it disclosed long before the trial. Even assuming, as Defendant contends, that the Supreme Court's decision in *United States v. Agurs*, 427 U.S. 97 (1976), charges prosecutors with "the duty to obtain the knowledge of the significance of the evidence in [its] file" (*see* Def.'s Mem., PageID.1738), Defendant did not suffer any meaningful harm from a failure to discharge that duty. The central concern in *Agurs* was the impact of nondisclosed evidence on "the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution." *Agurs*, 427 U.S. at 107. That concern is not at issue in Defendant's case because the Government disclosed the investigators' mistakes to Defendant before trial, and to the jury at Defendant's trial. Without an "omission [that] deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose." *Agurs*, 427 U.S. at 108.

The other cases cited by Defendant—including *Cone v. Bell*, 556 U.S. 449 (2009), *Banks v. Dretke*, 540 U.S. 668 (2004), *Strickler v. Greene*, 527 U.S. 263 (1999), *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), *Weatherford v. Bursey*, 429 U.S. 545 (1977), *Giglio v. United States*, 405 U.S. 150 (1972), *Mesarosh v. United States*, 352 U.S. 1 (1956), *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), and *Alley v. Bell*, 405 F.3d 371 (6th Cir. 2005)—are inapposite. None of them involves the circumstances here, in which the defendant claims that he suffered prejudice because the Government's initial charges against him were based, in part, on a misinterpretation of the evidence. In fact, these cases demonstrate that, where the defendant claims that the Government did not disclose relevant evidence, the concern is whether the Government's actions impacted the jury's verdict. *See Strickler*, 527 U.S. at 281  (noting that "strictly speaking, there is never a real

'*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict"). The cases do not suggest that any other form of prejudice, such as a delay in trial or alteration to the charges against the defendant, undermines the validity of a conviction. Because Defendant has not demonstrated that the Government's mistakes in this case had any impact on the trial or on the jury's verdict, those mistakes do not warrant relief from Defendant's conviction.

Furthermore, to the extent Defendant contends that the first two indictments against him were defective because the grand jury relied on inaccuracies in Babcock's testimony, Defendant does not state a viable claim for relief. Defendant's conviction stems from the charges in the second superseding indictment, not the charges in the other two indictments. Moreover, the jury's verdict cured any defects in the indictments. *See United States v. Edmond*, 815 F.3d 1032, 1042 (6th Cir. 2016) (Even if the prosecutor presented false testimony to the grand jury, "any prosecutorial misconduct before the *grand* jury was necessarily harmless given [defendant's] subsequent conviction by the *petit* jury."), *rev'd on other grounds*, *Edmond v. United States*, 137 S. Ct. 1577 (2017); *United States v. Combs*, 369 F.3d 925, 936 (6th Cir. 2004) ("[A]ny indictment defect generated by alleged perjured testimony was cured by the jury's verdict that [defendant] was guilty of this offense."). Accordingly, the Government's mistake in its assessment of the evidence against Defendant does not give rise to a viable claim. In other words, Defendant's appellate attorney was not ineffective for failing to raise the issue on appeal.

### D. Issue 6: Speedy trial rights

Defendant contends that his appellate attorney failed to add a claim regarding Defendant's right to a speedy trial. Defendant claims that he waived his right to a speedy trial because the Government "withheld" evidence against him; he asserts that if "actual screen captures were disclosed upon his request on January 17, 2012, [Defendant] would have demanded his speedy

trial rights[.]"   (§ 2255 Mot., PageID.1712.)   Defendant is apparently referring to the mistaken impressions by Wallock and Babcock that the live search results were screen shots.

When considering a speedy-trial claim, courts weigh the following four factors:  "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  The last factor, prejudice, is assessed in light of the following interests of the defendant:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.  If witnesses die or disappear during a delay, the prejudice is obvious.  There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.

*Id.* at 532.

Defendant does not argue, let alone show, that the factors in *Wingo* favor him.  Indeed, the record suggests otherwise.  The Government indicted Defendant in September 2011 and brought him to trial a little over two years later, in October 2013.  Defendant is responsible for the delay in his trial date.  He repeatedly asked the Court to postpone his trial so that he could obtain a new attorney, secure expert witnesses, and prepare for trial.  (*See* ECF Nos. 15, 30, 39, 48, 55, 61, 79.) The Court granted all of his requests.  His last request occurred on the morning of the first day of trial scheduled for June 2013.  The Court suspected that he made this request "for the purposes of delay."  (6/11/2013 Hr'g Tr. 29, ECF No. 129.)   Nevertheless, the Court granted it.  (7/24/2013 Order, ECF No. 96.)  He did not invoke his right to a speedy trial.

Defendant does not point to any prejudice to the preparation of his defense or to the outcome of his trial resulting from the delay.  Defendant suggests that he would have proceeded to trial in January 2012 had he known about the inaccuracies in Babcock's initial testimony to the grand jury, but as discussed above, the Court previously considered and rejected that claim.  (*See*

25

6/26/2013 Order Denying Mot. to Dismiss, ECF No. 90.)  Defendant offers nothing new to undermine that decision.  If anything, the record suggests that he intentionally delayed his trial for as long as possible, even after learning about Babcock's inaccurate testimony to the grand jury.

Defendant implies that he suffered prejudice because the Government altered the charges against him.  In September 2011, the Government charged Defendant with attempted receipt and attempted *possession* of child pornography.  (Indictment, ECF No. 1.)  In July 2012, however, the grand jury returned a superseding indictment charging Defendant with attempted receipt and attempted *access with intent to view* child pornography.  (ECF No. 46.)  The second superseding indictment in June 2013 modified a few of the underlying facts, but it contained the same charges as the previous indictment.  (ECF No. 81.)

The Government has discretion to determine which charges it will bring against a defendant, and it can change its mind.  In this case, it decided to proceed to trial with charges for attempted receipt and attempted access instead of attempted receipt and attempted possession, based on substantially the same facts as the previous indictments.  There was nothing improper about that decision, and it did not prejudice Defendant.

Defendant's speedy trial claim is conclusory and unsupported.  It was reasonable for his attorney not to raise that claim on appeal.

### E.  Issue 7: Rule 16 violations

Defendant asserts that "Rule 16 disclosure violations" prevented him from "coherently explaining his theory of the case."  (§ 2255 Mot., PageID.1712.)  Specifically, Defendant refers to the Government's alleged failure to disclose the following:  "actual screen captures"; "Babcock's forensic test results"; and the fact that "zero links were clicked, and zero images were saved or downloaded[.]"  (*Id.*)  Defendant did not preserve this issue, so the Court of Appeals would have reviewed it for plain error.

26

Rule 16 of the Federal Rules of Criminal Procedure requires the Government to permit the defendant to inspect and copy "papers, documents, data, [and] photographs" in the Government's possession if (1) the item is material to preparing the defense, (2) the Government intends to use the item in its case-in-chief at trial, or (3) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E).  In addition, Rule 16 requires the Government to permit the defendant to inspect and copy "the results or reports of . . . any scientific test or experiment" if it is "material to preparing the defense or the Government intends to use the item in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(F).

The record refutes Defendant's assertion that the Government did not disclose the screen shots or the results of its forensic testing.  In a pre-trial summary statement filed in September 2011, the Government represented that it had provided "Internet service provider records, monitoring service records" and a computer forensics report to Defendant.  (ECF No. 8.)  And at a hearing in June 2013, four months before trial, Defendant's attorney acknowledged that the Government had produced "everything."  (6/11/2013 Hr'g Tr. 12, ECF No. 129.)  At the same hearing, the prosecutor also informed the Court that the Government went through a "mock-up" of the Government's evidence with Defendant's attorney.  (*Id.* at 27.)

Defendant has not shown a failure to comply with Rule 16, let alone a failure that impacted his substantial rights.  He does not explain how the Government's delayed disclosure of evidence could have affected the outcome of his proceedings.  He contends that he did not click on any links in the search results or save any images of child pornography to his computer, but the jury heard that evidence from the Government's witness.  Agent Babcock testified that he had "no evidence and no reason to believe [Defendant] deliberately downloaded any pictures. . . .  He didn't click on anything and save it."  (Trial Tr. II at 286-87.)   Babcock also testified that his examination of

Defendant's computer revealed that "the user was using bing.com to attempt to or to actually look at child pornography." (*Id.* at 274.)  The Government never contended that Defendant clicked on any links in the search results.

Furthermore, Defendant had an opportunity to explain his theory of the case when he testified at trial.  The Government's actions did not impair his ability to do so.  His assertion that he could not coherently explain his case is wholly conclusory.

In short, Defendant's Rule 16 claim is meritless.  Defendant's appellate attorney reasonably decided not to raise the issue on appeal.  (*See* Neel Aff., ECF No. 179, PageID.2052 (asserting that Neel "is unaware of any Rule 16 disclosure violations").)

### F.  Issue 8:  "False testimony" to support indictment and detention

Defendant argues that the Government improperly deprived him of his right to liberty when it used Babcock's "false testimony" to support the first and second indictments against him. (§ 2255 Mot., PageID.1712.)  Defendant complains that the Government improperly detained him, and the Court denied him bond based on these indictments, in violation of the Fourth Amendment. (Def.'s Mem., PageID.1740.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."  U.S. Const. amend. IV. However, an "illegal arrest or detention does not void a subsequent conviction."  *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).  "[A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."  *Id.*  Similarly, Defendant's conviction "render[ed] his constitutional claims to pretrial bail moot."  *United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004) (citing *Murphy v. Hunt*, 455 U.S. 478, 481

(1982)).  In short, Defendant's challenges to his pretrial detention have no bearing on the validity of his conviction and sentence.  Accordingly, his appellate attorney was not ineffective for failing to raise these issues on appeal.

### G.  Issue 9:  "Duty to learn" claim

Defendant states that the prosecutors had a "duty" to "learn of both BRADY and GIGLIO evidence," and they failed to comply with this duty when "blindly believing" Agent Babcock's assessment of the evidence.  (§ 2255 Mot., PageID.1713.)  This claim is simply a restatement of Defendant's assertion that the Government "recklessly disregarded" the nature of the evidence in its possession; it is meritless for the reasons stated above with respect to issues 3-5.

### H.  Issue 10:  "Fabricated evidence" claims

Defendant asserts that his appellate attorney should have raised several claims concerning "fabricated evidence," referring to statements made by Agent Babcock to the grand jury and to the jury at Defendant's trial.  (§ 2255 Mot., PageID.1713.)

#### 1.  False testimony to the grand jury

First, Defendant refers to the false testimony by Agent Babcock to the first two grand juries that his printouts were screen shots of Defendant's computer.  The Court has already explained why the inaccuracies in Babcock's testimony to the grand jury is not a basis for relief.

#### 2.  False testimony at trial

Next, Defendant complains that Agent Babcock "falsely testified at trial that the June 13, 2013 grand jury had different charges," when in fact "they were exactly the same."  (§ 2255 Mot., PageID.1713.)  Defendant is apparently referring to the following testimony by Babcock:

Q.  Okay.  Now, the first time I believe you testified before the grand jury was September 8, 2011, correct?

A.  . . . I would assume that's correct, yes.

Q.  Okay.  And during the course of that grand jury proceeding, did you give testimony to the extent that the live links that you made screen shots of, that they-- did you testify that those were actually screen shots of Mr. Groenendal's activity?

A.  I did.

Q.  Okay.  And that was not true?

A.  That was an error, that is correct.

Q.  Okay.  And then there was another grand jury, I believe the second time was July 18th, 2012, does that sound familiar?

A.  Sounds about right, yes.

\* \* \*

Q.  And regarding those live links and your misunderstanding that you believed those were screen shots of Mr. Groenendal's activity, you testified essentially the same; is that correct?

A.  That is correct.

\* \* \*

Q.  Okay.  Nonetheless, you testified a third time, correct?

A.  Yes.

Q.  And was your testimony the same regarding these—this misunderstanding?

A.  No, we corrected the errors on the record in the third.

Q.  That's right.  And based on that, there were changes in the charges, correct?

A.  I don't know if they were based solely on that, but *there were changes in the charges*, yes.

(Trial Tr. II at 323-24, 326-27 (emphasis added).)

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment[.]").  "'The knowing use of false or perjured testimony constitutes a denial

30

of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

To succeed on his claim, Defendant "'must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.'" *Id.* To show falsity, Defendant must demonstrate that the testimony was "'actually perjured'"; "'mere inconsistencies'" are not sufficient to establish knowing use of false testimony. *Id.* In turn, "[a] false statement is material . . . and '[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010) (second and third alterations in original) (quoting *Giglio*, 405 U.S. at 154).

Defendant has not shown that Babcock's testimony was false. The charges in the second and third indictments were not "exactly the same" as Defendant contends. The two indictments charged the same offenses, but the underlying facts were not the same. Among other things, the Second Superseding Indictment (ECF No. 81) charged different dates of conduct than the previous indictment (ECF No. 46).

Moreover, even if Babcock's testimony was false, Defendant has not shown that this false testimony was material. The changes to the indictment over the course of the case, or lack of such changes, have no bearing on the validity of Defendant's conviction. There is no reasonable probability that a jury informed that the second and third indictments were exactly the same would have reached a different conclusion about Defendant's guilt.

### 3. Improper arrest and pretrial detention

Third, Defendant contends that Babcock's allegedly false testimony at trial about the changes to the indictments was somehow used to arrest Defendant and obtain a search warrant.

That claim makes no sense.  It is also meritless for reasons discussed in Issue 8; the validity of the indictments or arrest warrant in Defendant's case is irrelevant to his conviction.

In summary, Defendant's "fabricated evidence" claims are baseless.

## I. Issue 11:  Misstatements of fact

Defendant asserts that his appellate attorney ignored "multiple misstated facts" by Babcock, Wallock, and the prosecutor.  (§ 2255 Mot., PageID.1713.)

### 1.  Babcock's testimony

#### (a)  "They don't get on the hard drive."

After the prosecutor asked Agent Babcock about the significance of the temporary internet files on Defendant's computer, Babcock stated the following:

> [W]hat we had seen already was that the user was looking at, and the user meaning Mr. Groenendal, was looking at these image search results.  Image search results return thumb nails.  They get stored in temporary internet space.  They don't get on the hard drive.  They don't get stored to a separate folder unless the user downloads those pictures and specifically saves them.
>
> Now, any one of those pictures could have been clicked on and saved.  You can right click on it and tell it to save image as and it will pull the picture up if available and save it on a hard drive.  That did not happen in this case.  And I had seen nothing to indicate that it had.  What I had seen was that somebody, Mr. Groenendal, was using certain phrases to search for both regular pornography and child pornography on the computer and then not downloading it per se.  The problem is that the computer, in order to operate faster on the internet downloads stuff for you, whether you want for it to get there or not. . . . When you go back the second time, the page will load significantly faster than the first time, because it's stored images and items . . . from the web page in the temporary internet files . . . .
>
> [I]t just does it automatically.  So knowing Mr. Groenendal had gone to Bing told me that the primary information we were going to want to see, which was what pictures he saw, actually saw, would be contained in temporary internet files.

(Trial Tr. II at 274-76.)

Defendant contends that Babcock confused and misled the jury by making conflicting statements about the images discovered on his computer.  For instance, Babcock asserted that the

images in Defendant's search results were stored in the temporary internet space on Defendant's computer, but then Babcock stated, "They don't get on the hard drive." (Trial Tr. II at 274.)

Although this statement is potentially confusing if you know that all the images recovered from Defendant's computer were stored on the hard drive, the context makes clear that Babcock was making a distinction between images stored by the computer "automatically" in the "temporary internet files," and images intentionally "saved" by the user in a "separate folder" on the "hard drive." (*See* Trial Tr. II at 274-75.) Babcock made a similar comment shortly afterward, stating, "I didn't find any [images] saved on his hard drive, it was just the stuff on the temporary internet files." (*Id.* at 278.) However, Babcock later clarified that the temporary internet files were on Defendant's computer. (*See id.* at 282-84.) That's all the jury needed to know about their location.

> **(b) "[T]he primary information we were going to want to see, which was what pictures he saw, actually saw, would be contained in temporary internet files."**

Defendant contends that Babcock's statement about the temporary internet folder misled the jury because it implied that Defendant actually saw the images in that folder. According to Defendant, "[t]he jury was not told [that] 90% of the unviewed images also went to this same file." (Def.'s Mem., PageID.1735.)

As discussed above, Defendant must show that (1) Babcock's statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *See Coe*, 161 F.3d at 343. Defendant's assertion that Babcock made a *misleading* statement is not sufficient to warrant relief. *See Akrawi v. Booker*, 572 F.3d 252, 265 (6th Cir. 2009) ("The subject statement must be 'indisputably false' rather than 'merely misleading.'" (quoting *Abdus-Samad v. Bell*, 420 F.3d 614, 626 (6th Cir. 2005)). Defendant fails to show the first element. He has not shown that the statement was actually false.

Moreover, there was nothing false or misleading about Babcock's statement when viewed in context.  He was simply explaining why he expected to find relevant evidence in Defendant's temporary internet folder.  Babcock never expressly claimed that Defendant viewed all the images in that folder.  In fact, Babcock testified that it was possible for a user not to see images that end up in the temporary internet folder, particularly if the browser loads images outside the browser's viewing window.  (Trial Tr. II at 278-79.)  Babcock also admitted that he could not be certain that Defendant had seen the images of child pornography; Babcock believed that Defendant had seen some of them due to their placement near the top of the search results when Babcock conducted the same searches himself.  (*Id.* at 333.)  Thus, the jury was aware of the basis for Babcock's opinions and that there was a possibility that Defendant did not actually view the images in his temporary internet folder.  Babcock did not mislead the jury.

### (c)  "Possibly, yes."

Defendant quibbles with Babcock's answer to a question about the temporary internet files. Defendant's attorney asked Babcock if, after a user clicks on "[a link to] CNN" and "then close[s] it," the computer has "already downloaded information that you may not have seen."  (Trial Tr. II at 332.)  Babcock responded, "Possibly, yes."  (*Id.*)

Defendant contends that the correct answer to this question was "Absolutely!" and that Babcock's answer was misleading because "every search result is automatically sent to a computer's temporary internet file."  (Def.'s Mem., PageID.1745.)  Defendant's argument misconstrues the testimony.  The question to Babcock did not ask whether the search results were automatically sent to the temporary internet files; rather, it asked whether the computer could download information that the user has not seen if the user clicks on a link and then closes it. Defendant did not click on any links, so the question and the response were somewhat irrelevant.

Nevertheless, Babcock's response was consistent with the rest of the testimony and evidence. It was not false or misleading.

### (d) "So the other charges, the other two grand juries didn't have anything to do with the charges the defendant is facing with this jury today?"

Defendant contends that Babcock lied when affirming that the charges in the previous indictments did not "have anything to do" with the charges Defendant faced at trial. (*See* Trial Tr. II at 338.) Strictly speaking, it is not quite true that the earlier charges had "nothing" to do with the charges in the second superseding indictment. The charges in all the indictments were based on essentially the same conduct by Defendant. As a legal matter, however, there is some truth in Babcock's statement. The third indictment superseded the others; thus, only the charges in the third indictment mattered at Defendant's trial. For that reason, Babcock's statement is immaterial to Defendant's conviction.

### (e) Alleged misstatements that are not present in the record

Defendant claims that the jury "adopted" Babcock's "conclusion" that "all seven illegal thumbnails were enlarged and viewed on Groenendal's computer screen" and that this conclusion "was quoted as a reason the [Court of Appeals] affirmed Groenendal's conviction[.]" (Def.'s Mem., PageID.1740.) Defendant's claims are unfounded. Babcock never claimed that Defendant enlarged and viewed all seven of the images of child pornography discovered on Defendant's computer, and neither did the Court of Appeals.

### 2. Wallock's testimony

Wallock testified that "typically" she met with Defendant on a monthly basis, and "[a]t least once a month" at her office. (Trial Tr. I at 106.) Defendant argues that this testimony was false because "his report date for July [was] cancelled." (Def.'s Mem., PageID.1746.) However,

the cancellation of a single report date does not prove that Wallock met with Defendant less than once a month.

Even if Wallock did not meet with Defendant in July, Defendant has not shown that Wallock's alleged misstatement was material. He apparently believes that the lack of such a meeting would have supported his claim that he was "confused about his homework assignment" and that he was "arrested for doing what he thought was court mandated homework[.]" (*Id.*) However, Defendant offered the "homework" defense at trial. The jury did not accept it. There is no reason to believe that the jury would have been less likely to convict him had it known that he did not meet with Wallock in July. Indeed, he admitted that he never told her about the pornography on his computer. He did not have to meet with her in person to discuss his therapy homework.[5] Thus, his claim is meritless.

In short, Defendant has not shown that the Government presented indisputably false testimony that could have affected the outcome of his trial; thus, Defendant's claims about misstatements of fact by Babcock and Wallock are meritless.

### 3. Prosecutor's statements

Defendant believes that prosecutor made "improper" and "misleading" statements to the jury. (Def.'s Mem, PageID.1731.) According to Defendant, the prosecutor improperly told the jury that Defendant actually viewed the images stored on his hard drive, and that he did so "all day long." (*Id.*)

The prosecutor stated the following in his closing argument:

---

[5] Records provided by Defendant indicate that he kept in touch with Wallock via email until a few days before his arrest. In August 2011, Defendant sent Wallock an email updating her on his progress with his therapy homework and assuring her that he would "continue to keep [her] in the loop[.]" (8/18/2011 Email, ECF No. 191-6, PageID.2289.) Defendant did not mention that he was using his computer to search for pornography.

> Look at what was actually found, what he succeeded in looking at. You know this because it's on the computer.
>
> Exhibit 19, and this stuff is hard to look at. That is what he was looking for. That is what those terms give you, and that's exactly what he found.

(Trial Tr. III at 480-81.)

> And in rebuttal to the defense's closing argument, the prosecutor stated the following:
>
> So look at the evidence in front of you. Look at the child pornography. Look at the terms. Look at the whole course of conduct. There is no doubt whatsoever what this man was intending to do. He made the deliberate effort. He very much intended to receive child pornography, and he doesn't get to define it. Think about it for a second. Does that even make any sense? It's okay to bring up child pornography on your computer, to look at it all day long, as long as it's in thumbnails. Does that make one tiny little bit of sense? Absolutely not. You'll hear, just like I said, he received it, he knowingly sought it out, and exercised control over it. . . .

(*Id.* at 503-04.)

To prevail on his claim, Defendant must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To determine whether a prosecutor's statements violated due process, the Court must first determine whether the remarks were "improper." *United States v. Galloway*, 316 F.3d 624, 632 (6th Cir. 2003).

If the remarks were improper, then the Court must determine whether they were "flagrant." *Id.* "There are four factors . . . to determine if an improper statement was flagrant: 1) whether the statements tended to mislead the jury and prejudice the defendant; 2) whether the statements were isolated or pervasive; 3) whether the statements were deliberately placed before the jury; and 4) whether the evidence against the accused is otherwise strong." *Id.* (citing *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994)). Even if the remarks were not flagrant, the Sixth Circuit will reverse a conviction if: "1) the proof of the defendant's guilt is not overwhelming;

2) the defense objected to the statements; and 3) the trial judge did not cure the impropriety through an admonishment to the jury." *Id.*

The prosecutor's remarks were not improper.  It is improper for a prosecutor to "misstate evidence." *United States v. Carter*, 236 F.3d 777, 785 (6th Cir. 2001).  However, a prosecutor is allowed "to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  In this case, that means the prosecutor could properly argue that Defendant intended to access child pornography and that he actually viewed it.  As discussed in more detail below, those were perfectly reasonable inferences from the evidence.

### (a)  "Look at what he actually found, what he succeeded in looking at. . . . Exhibit 19."

Exhibit 19 contained the seven images of child pornography discovered on Defendant's computer.  (*See* Trial Tr. II at 282, 294.)  Defendant questions whether the Government proved that he saw all seven of these images.

The prosecutor did not expressly claim that Defendant saw all of the images in Exhibit 19, though he could have.  Instead, the prosecutor walked through the evidence to explain why Babcock believed that Defendant had seen several of these images due to their position in Defendant's search results.  (*See id.* at 481-82.)  These arguments were proper because they were based on Babcock's testimony and reasonable inferences from all the evidence.

### (b)  "It's okay to bring up child pornography, to look at it all day long, as long as it's in thumbnails.  Does that make one tiny little bit of sense?"

These statements was also proper.  The prosecutor was not claiming that Defendant literally looked at child pornography "all day long"; rather, the prosecutor was responding to Defendant's argument that he did not have the requisite intent to view child pornography because he never clicked on any of the thumbnail images or downloaded them.  (*See* Trial Tr. III at 497 ("Never

once did [Defendant] cross the line by clicking on the websites or downloading any images.").)

The prosecutor rightly suggested that this defense made no sense. There is no meaningful

distinction between accessing pornography through a search engine and accessing it directly from

the original source by clicking on one of the search results.

### (c) "[H]e knowingly sought it out and exercised control over it."

Defendant argues that this statement was improper because there is no proof that he

enlarged, saved, copied, downloaded, transferred, or manipulated all seven images in Exhibit 19.

(§ 2255 Mot., PageID.1743.) However, the prosecutor did not make such a specific claim in this

statement; the prosecutor was referring to Defendant's "whole course of conduct," not just the

seven images of child pornography on Defendant's hard drive. The evidence showed that

Defendant enlarged at least one of the search results on his screen and scrolled through many pages

of those results. In doing so, he exercised control over the images in those search results. Although

the Government did not provide direct evidence that Defendant actually manipulated or controlled

any of the seven images of child pornography on his hard drive, the prosecutor and the jury could

infer that control by looking at Defendant's entire course of conduct.

In short, Defendant has not shown that his appellate attorney failed to raise a valid claim

regarding misstatements of fact at the trial.

### 4. Misstatement in sentencing memorandum

Defendant objects to the prosecutor's statement in the Government's sentencing

memorandum that "Babcock's forensic analysis revealed that specific images of child pornography

found on the defendant's computer had in fact been present and visible on the defendant's

computer monitor." (*See* Def.'s Mem., PageID.1743.) That statement was an accurate reflection

of Babcock's testimony. Babcock explained that he discovered the seven images of child

pornography in Exhibit 19 on Defendant's computer, and that Defendant's computer stored these

images as a result of Defendant's search activity.  Babcock also explained why he believed that at least two of these images would have been visible on Defendant's screen due to their location in the search results.  Thus, Defendant's objection is meritless.

Even if the statement was false, Defendant does not explain how it affected any aspect of his sentence.  Accordingly, he has not shown that he was prejudiced by his attorney's failure to raise the issue on appeal.

### 5.   Showing jury images of child pornography

While discussing the prosecutor's alleged misstatements, Defendant contends that the prosecutor unfairly prejudiced him at trial by "repeatedly showing the jury unproven illegal images of child pornography," and that Rule 403 of the Federal Rules of Evidence should have protected Defendant from this evidence.  (Def.'s Mem., PageID.1731.)

Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice."  Fed. R. Evid. 403. Defendant's attorney did not object to admitting the images of child pornography, so the Court of Appeals would have reviewed the issue for plain error, which is an error that "'should have been apparent to the trial judge without objection, or that strike[s] at fundamental fairness, honesty, or public reputation of the trial.'"  *United States v. Harmon*, 593 F. App'x 455, 461 (6th Cir. 2014) (quoting *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989)).

Defendant offers no argument to explain why the images were unfairly prejudicial to him. "Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403."  *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996).  In this case, the images were relevant to show that Defendant intended to access child pornography because his search results actually retrieved child pornography.  Babcock explained how he found these images and how they arrived on Defendant's computer.  The images were

prejudicial in the sense that they tended to prove Defendant's guilt, but they were not unfairly so. Counsel was not ineffective for failing to raise a meritless evidentiary issue.

### J.  Issue 12:  Sentencing hearing issues

According to Defendant, his appellate attorney ignored "issues that [Defendant] brought up at his sentencing hearing," including "misstatements at trial."  (§ 2255 Mot., PageID.1714.) Defendant cites pages 15 and 16 of his sentencing transcript (*see* Sentencing Tr., ECF No. 130, PageID.1366-1367), but those pages do not specify any particular issues.  Defendant also asserts, without support, that he "was accused of lying about his court mandated homework[.]"  (§ 2255 Mot., PageID.1714.)  The Court discerns no factual or legal basis for Defendant's claim regarding issues that he raised at his sentencing hearing.  Accordingly, the claim is meritless.

### K.  Issue 13:  Fraud on the court

Defendants states that his attorney should have raised an issue of "fraud upon the court" due to "misstated facts about chapter five's workbook."  (§ 2255 Mot., PageID.1714.)  Defendant does not indicate what misstatements he is referring to.  Thus, this claim is also meritless.

Defendant also claims that the written transcripts of his trial omit "multiple times AUSA Lewis accused [Defendant] of lying about chapter five's homework."  (*Id.*)  This claim is unsupported.  A transcript certified by a court reporter is "deemed prima facie a correct statement of the testimony taken and proceedings had."  28 U.S.C. § 753(b).  Due to the "presumption of regularity" that applies to the Court's transcripts, Defendant has the burden of showing that the transcripts are incorrect.  *See United States v. Bradshaw*, No. 99-5724, 2000 WL 1434677, at *1 (6th Cir. Sept. 22, 2000).  He has not met that burden.  There is no credible factual support for Defendant's claim that the transcripts are inaccurate; thus, there would have been no reason for his appellate attorney to raise the issue on appeal.  Furthermore, Defendant's appellate attorney did

not represent Defendant at trial and was not present when the prosecutor allegedly made these remarks, so he would not have known about them.

The prosecutor did question the truthfulness of Defendant's statements when cross-examining Defendant, though nothing in the transcripts indicates that the prosecutor called Defendant a liar.  Defendant told the jury that he conducted searches using names like "Ashley" because a non-profit organization asked him to find a "face shot" of a woman for a brochure.  (Trial Tr. III at 448, 457.)  But the prosecutor pointed out that, during the same time period, Defendant also searched for "lips," "tush," and "glory hole."  (*Id.* at 457-59.)  Defendant acknowledged that his search for "glory hole" was a search for pornography.  (*Id.* at 459.)  The prosecutor followed up by asking Defendant, "what you told this jury . . . that you were just looking for faces, that wasn't true, was it sir?"  (*Id.* at 460.)  There was nothing improper about that question.

The prosecutor also stated, during his closing argument, that the jury "may have some reason to doubt what [it] heard from the defendant in this case" (Trial Tr. III at 478), but that statement was entirely proper in light of the evidence and in the context of the prosecutor's entire argument.  The jury had plenty of reason to doubt Defendant's testimony that he did not look at his computer screen when searching for "deviant" pornography, or that he did not intend to access child pornography when using search terms specifically tailored to that subject matter.

Defendant asks the Court to order the court reporter to provide her original notes or recordings from the trial to confirm Defendant's claim that the prosecutor repeatedly accused him of lying.  (*See* Suppl. to § 2255 Mot., ECF No. 160, PageID.1861.)  Rule 6 of the Rules Governing Section 2255 Proceedings provides that the Court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in

accordance with the practices and principles of law." Rule 6(a), Rules Governing 2255 Proceedings. Defendant has not shown good cause.

To demonstrate good cause, Defendant must provide "'*specific allegations* . . . [that] show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore, entitled to relief . . . .'" *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (emphasis in original). "'The burden of demonstrating the materiality of the information requested is on the moving party.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Id.* (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)).

Defendant has not shown that he would be entitled to relief if the facts are more fully developed. Defendant raises the prosecutor's misconduct as an example of an issue that his appellate counsel should have raised on appeal, but even if Defendant is correct that the prosecutor accused him of lying, Defendant does not indicate how his appellate attorney would have known about this issue for purposes of raising it on appeal.

Furthermore, even if his appellate attorney knew about the issue, Defendant cannot demonstrate that he is entitled to discovery to flesh out his claim because he cannot show that, if the facts are more fully developed, he would be entitled to relief. Although it is generally improper for prosecutors to "offer their opinions as to credibility of a witness [or] guilt of a defendant," *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), such opinions are not always prejudicial. *See Cristini v. McKee*, 526 F.3d 888, 902 (6th Cir. 2008) (finding that prosecutor's statement that witnesses were "liars" was harmless because it was "based on evidence in the record, and was not framed in such a way that would suggest the prosecutor knew of any outside evidence"). Here,

43

Defendant apparently contends the prosecutor accused Defendant of "lying about chapter five's homework from his court mandated sex offender therapy."  (Def.'s Suppl. Mem., ECF No. 160, PageID.1860.)  It is not clear what this means.  Assuming the prosecutor made such an accusation, it was too vague and tangential to Defendant's guilt to deprive Defendant of a fair trial.

### L.  Issue 14:  Failure to develop facts

Defendant asserts that his trial attorneys "failed to develop facts [as] a result of withheld favorable evidence."  (§ 2255 Mot., PageID.1714.)  Defendant contends that the Government accused him of viewing photographs that he never viewed, and that his attorneys "failed to develop the facts" supporting this assertion.  (*Id*.)  This claim is wholly conclusory.  Defendant does not indicate what his attorneys could have done that would have been helpful for him and, in any event, Defendant would have been aware of which images he did or did not view.  The Government did not withhold any evidence about this from him.  In effect, Defendant is simply asserting the same defense that the jury rejected at trial.

### M.  Issue 16:[6] *Daubert* violation

Defendant suggests that there was a violation of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because Babcock's testimony was not relevant and reliable.  Defendant complains, "Why didn't Babcock know that every search result is automatically sent to a computer's temporary file even when not viewed?"  (§ 2255 Mot., PageID.1414.)

According to *Daubert*, the Court serves a "gatekeeping role" to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597 (interpreting Fed. R. Evid. 702).  "Pertinent evidence based on scientifically valid principles will satisfy those demands."  *Id.*

---

[6] Defendant's numbering skips from issue 14 to issue 16.  (§ 2255 Mot., PageID.1714.)

Contrary to Defendant's assertion, Babcock was aware that internet search results are sent automatically to the computer's temporary file, even when they are not viewed.  That's what he told the jury.  He also told the jury why he believed that Defendant had, in fact, seen some of the images in Defendant's temporary internet folder.  Babcock based his opinions on his observation of the evidence and reasonable inferences from those observations.  There was nothing unreliable about them.  Thus, this claim is baseless.

### N.  Issue: 17:  Request for rehearing

Defendant contends that his appellate attorney did not ask the court of appeals for a rehearing en banc, even though Defendant "replied to his request to submit a written request to do so."  (§ 2255 Mot., PageID.1715.)  Neel explains that he did not file a petition for a rehearing because the panel decision was unanimous and the rules did not call for a rehearing.  Rule 35 of the Federal Rules of Appellate Procedure provides that a petition for rehearing en banc must "begin with a statement" that the panel decision "conflicts with a  decision of the United States Supreme Court or of the court to which the petition is addressed" or that "the proceeding involves one or more question of exceptional importance," such as when the "panel decision conflicts with the authoritative decision of other United States Courts of Appeals that have addressed the issue." Fed. R. App. P. 35(b)(1).

Defendant does not identify a basis for seeking a rehearing under Rule 35; thus, he has not shown unreasonable conduct or prejudice.  Moreover, "there is no constitutional right to [the assistance of] counsel in seeking rehearing en banc—and where there is no constitutional right to counsel, the client's constitutional rights cannot be violated by the allegedly defective performance of his lawyer."  *McNeal v. United States*, No. 94-4146, 1995 WL 290233, at *2 (6th Cir. May 11, 1995).

### O.  Issue 18: Petition for writ of certiorari

Defendant critiques his appellate attorney's failure to file a petition for a writ of certiorari with the Supreme Court after the Court of Appeals denied Defendant's appeal.  Neel asserts that after the Court of Appeals' decision, he informed Defendant of the 90-day deadline for filing a petition for a writ of certiorari.  (Neel Aff., PageID.2058.)  Neel's letter, which is part of the Court of Appeals' record, advised Defendant that Neel did not think there was a basis for requesting a rehearing, and told Defendant to notify Neel by June 27, 2015, if he wished to appeal to the Supreme Court.  (*See Groenendal*, No. 14-1143 (6th Cir.), Letter to Def., Doc. 30, Page: 3.)  Neel contends that Defendant did not inform him that he wanted to file a petition for a writ of certiorari until after the deadline for doing so had passed.  (Neel Aff., PageID.2058.)

The appellate record supports Neel's assertion.  It indicates that Defendant expended his 90 days by attempting to obtain a rehearing from the Court of Appeals.  In July 2015, long after the 14-day deadline for seeking a rehearing, *see* Fed. R. App. P. 40(a)(1), Defendant asked the Court of Appeals questions about filing a *pro se* petition for rehearing.  (*Groenendal*, No. 14-1143 (6th Cir.), Letter, Doc. 30, Page: 1.)  The Court of Appeals interpreted Defendant's letter as a request for more time and denied the request.  (*Groenendal*, No. 14-1143 (6th Cir.), 7/23/2015 Order, Doc. 31.)  Meanwhile, Defendant sent the Court of Appeals his petition for a rehearing, which it received on the last day of the 90-day deadline.  (*See Groenendal*, No. 14-1143 (6th Cir.), Pet. for Rehearing, Doc. 32-1.)  He did not file a petition for a writ of certiorari.

In any case, Defendant's claim is meritless because "the Constitution does not entitle a criminal defendant to the assistance of counsel for the filing of a petition for certiorari, so counsel's failure to file that petition cannot amount to constitutionally ineffective assistance."  *Nichols v. United States*, 53 F.3d 240, 249-50 (6th Cir. 2009) (en banc).  Consequently, "if there was an error

in failing to file that petition, [the Court] must attribute that error to [Defendant] himself, not his counsel." *Id.* at 250.

### P.  Issues 19 & 20: Failure to raise additional issues

Defendant again asserts that the prosecutor misstated facts during his closing argument, referring the Court to Defendant's memorandum for specific details.  Defendant also claims that his appellate attorney "failed to add multiple items in direct appeal as plain error that were not objected to at [Defendant's] trial due in part to withheld favorable evidence," referring the Court to Defendant's memorandum for more details.  (§ 2255 Mot., PageID.1715.)  The Court addressed the substance of these claims in its discussion of Issues 1, 10, 11, and 13.  For the reasons already stated, these claims are meritless.

### Q.  Issues 21 & 22: Denial of requests for transcripts

Defendant claims that his appellate attorney refused Defendant's requests for copies of the transcripts from Defendant's trial and sentencing, thereby preventing Defendant from seeking a rehearing en banc or filing a petition for a writ of certiorari after the Court of Appeals denied his appeal.  As indicated above, Defendant had no constitutional right to the assistance of counsel after the Court of Appeals denied his appeal.  Thus, his attorney's refusal to provide copies of transcripts does not give rise to a claim for relief.

Moreover, the record indicates that Defendant failed to file timely and proper requests for a panel rehearing and for certiorari because he misunderstood the applicable deadlines.  As he told the Court of Appeals, he thought that the deadline for requesting a rehearing was 90 days after the Court of Appeals' decision.  (*See Groenendal*, No. 14-1143 (6th Cir.), Pet. for Rehearing, Doc. 32-1, Page: 1 ("My understanding was I had 90 days from April 27, 2015 to file a rehearing request.").)  By the time he filed that request, the deadlines for seeking a rehearing and for petitioning for certiorari had expired.  In other words, during the 90 days in which Defendant could

47

have prepared an appeal to the Supreme Court, he focused his efforts on a futile attempt to obtain a rehearing from the Court of Appeals. The lack of transcripts made no difference to the outcome of his challenges to the appellate court's decision.

### R. Issue 23: Failure to investigate claims regarding misstated facts and improper comments

Defendant contends that Neel failed to investigate or respond to Defendant's requests to add claims to his appeal regarding "misstated facts and improper comments." (§ 2255 Mot., PageID.1715.) For the reasons discussed above, those claims have no merit. Consequently, counsel's failure to include them in the appeal did not prejudice Defendant.

### S. Issue 24: Plea offer

Defendant asserts that he accepted an offer to plead guilty to an obscenity charge with a maximum sentence of 60 months in prison. He provides emails indicating that, in November 2012, the prosecutor offered to let Defendant to plead guilty to this charge and Defendant accepted the offer. (*See* Emails, ECF No. 224-1.) Shortly thereafter, Assistant United States Attorney Daniel Mekaru informed Defendant's attorney, Peter Samouris, that "management has rejected the plea proposal." (*Id.* at PageID.3011.) Samouris contends that he conveyed Defendant's acceptance to the Government, but the Government withdrew the offer "before [it was] formally accepted on the record by Defendant." (Samouris Aff., ECF No. 180, PageID.2064.) Defendant believes that his attorney should have raised this issue on appeal.

Defendant does not explain why the plea offer would have been pertinent to his appeal. Based on the emails, it appears that the Government's offer was contingent upon acceptance by the United States Attorney's office. That office did not approve the plea offer so the Government withdrew it. (*See* Sentencing Hr'g Tr. 48, ECF No. 130 (Court explaining that "there was a plea

offer placed on the table by Mr. Mekaru subject to approval by management, and then management . . . didn't approve it so, therefore, Mr. Mekaru had to withdraw it").)

Even if the offer was *not* contingent upon approval by the U.S. Attorney's office, Defendant's acceptance of that offer did not give him the right to enforce it because this Court never accepted the parties' bargain. "[U]ntil accepted by the court, a plea bargain is a mere executory agreement, and is not specifically enforceable[.]" *Robey v. United States*, No. 85-1470, 1987 WL 36860, at *3 (6th Cir. Mar. 25, 1987); *see United States v. Moser*, Nos. 88-5846, 88-5888, 1989 WL 25800, at *4 (6th Cir. Mar. 20, 1989) (noting that "no constitutional rights are implicated when a prosecutor withdraws from a proposed plea bargain that defendant has accepted before the plea bargain is embodied in the judgment"). Thus, "[e]ven if a defendant has timely accepted a proposed agreement and the prosecutor subsequently revokes the offer, there is no constitutional right to enforce the original plea agreement." *United States v. Delgado*, No. 94-3714, 1995 WL 419003, at *7 (6th Cir. July 14, 1995); *accord United States v. Allen*, 53 F. App'x 367, 373 (6th Cir. 2002) ("[T]he Supreme Court has held that when the prosecutor withdraws a plea agreement, the defendant cannot specifically enforce it.").

There is an exception to the foregoing rule where the defendant "detrimentally relies" upon the plea agreement. *See United States v. Rucker*, 133 F. App'x 187, 191 (6th Cir. 2005). The Government might be bound by an agreement in those circumstances, even before the Court has accepted it. *Id.* In this case, however, Defendant does not contend that he relied upon the agreement to his detriment. Thus, the exception to the general rule does not apply.

Defendant cites cases in which an attorney provided ineffective assistance when advising a client to reject a plea offer, and as a remedy, the court ordered the government to reoffer the plea agreement. *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012); *Titlow v. Burt*, 680 F.3d 577 (6th Cir.

2012), *rev'd*, 571 U.S. 12, 24 (2013). Those cases do not apply because Defendant's attorney did not advise him to reject the Government's plea offer, and Defendant does not contend that his attorney provided bad advice in connection with the Government's other offers.[7]

In short, after the Government withdrew its offer for Defendant to plead guilty to obscenity, there was nothing more that Defendant or his attorney could have done; they could not force the Government to abide by the offer. Defendant's appellate attorney was not ineffective for failing to raise a meritless issue on appeal.

### T. Issue 25: "Pretrial" *Brady* and *Giglio* issues

Defendant argues that his appellate attorney failed to raise "many pre-trial BRADY and GIGLIO issues stated all throughout the record." (§ 2255 Mot., PageID.1716.) Defendant does not specify those issues. Instead, he quotes various passages from the transcript for his final pretrial conference. Those passages indicate that Defendant was not satisfied with his attorney's responses, or lack thereof, to Defendant's questions about the evidence against him. (*See* Final Pretrial Conf. Tr. 13-19, ECF No. 59.) They also indicate that, despite the fact that Defendant's attorney had already hired a forensic expert to examine Defendant's computer, Defendant wanted his attorney to hire another expert to come up with "printed proof" to support Defendant's case. (*Id.* at 18.) Thus, Defendant's claim that there were additional *Brady* or *Giglio* issues is wholly conclusory. Nothing in the record indicates that the Government withheld evidence in violation of *Brady*, or knowingly presented false evidence at trial in violation of *Giglio*.

There is also no support for Defendant's suggestion that his trial attorney provided ineffective assistance by failing to answer Defendant's questions to his satisfaction or by failing

---

[7] Samouris states that Defendant rejected "at least three different, formal proposed Rule 11 Plea Agreements" before finally accepting the offer to plead guilty to an obscenity charge. (Samouris Aff., PageID.2064.)

to find "printed proof" to support Defendant's case; Defendant provides no reason to believe that there is additional evidence that would have benefitted his case.

Defendant contends that an evidentiary hearing will show that the Government possessed "actual screen captures from [Defendant's] confiscated computer [that] they chose not to show . . . at his . . . trial." (§ 2255 Motion, PageID.1718.) He offers nothing to support this assertion. Moreover, he does not indicate how this evidence, even if it exists, would have been helpful. He contends that "[n]one of the actual captures matched the seven images used to arrest [him]." (*Id.* at PageID.1717.) If he is referring to the fact that the screen shots of his computer did not show any of the seven images of child pornography discovered on his hard drive, he is correct. But the Government did not withhold that evidence from Defendant or from the jury. In fact, Agent Babcock repeatedly told the jury that none of the screen shots contained child pornography. (Trial Tr. II at 327, 329.)

**U. Additional Issue:  Cumulative error**

Defendant contends in his supporting memorandum that his appellate attorney should have argued "cumulative error." (Def.'s Mem., PageID.1737.) According to Defendant, "even if all the errors noted in this § 2255 motion are mostly 'harmless errors' the 25 months from his arrest to his trial had a lot of errors in the entire process for this court's consideration." (*Id.*)

"Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair." *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983). Defendant has not shown any error in the proceedings (including error by the Court, by the Government, or by his counsel) that had an impact on his trial. The Government made a mistake in its assessment of the evidence against Defendant, but it disclosed that mistake long before trial. Consequently, Defendant cannot show a cumulation of errors that was "so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*,

376 F.3d 593, 614 (6th Cir. 2004).  Thus, Defendant has not shown that it was unreasonable for his attorney to raise "cumulative error" as an argument on appeal.

In summary, none of the many issues that Defendant raises have merit.  Defendant cannot show that his appellate attorney provided ineffective assistance by failing to raise meritless issues.  Consequently, the claim of ineffective assistance of appellate counsel in Ground One of Defendant's motion is also meritless.

**Ground Two:** Denial of transcripts by the courts and by appointed appellate counsel

Defendant contends that he asked his appellate attorney for a copy of his trial and sentencing transcripts, but his attorney refused to provide them.  Defendant did not receive them until February 2016, many months after the deadline for seeking a rehearing en banc in the Court of Appeals.  Defendant claims that this delay "violated his constitutional rights" and prejudiced him because he could have added additional issues to his petition for a rehearing if he had his transcripts, including his claim that his trial transcripts were "altered."  (§ 2255 Motion, PageID.1718.)

To the extent Defendant claims that his attorney deprived him of his constitutional rights, Defendant's claim is meritless because he had no right to the assistance of counsel to prepare a petition for rehearing en banc, as explained above.  Thus, Neel's refusal to provide those transcripts did not violate Defendant's constitutional rights.

To the extent Defendant claims that this Court denied him a copy of his transcripts, the Court is aware of no such request in its record, or in the record of the Court of Appeals, dating before the deadlines passed for filing a petition for rehearing or a petition for a writ of certiorari.[8]

---

[8] The earliest reference to transcripts in a post-appeal document from Defendant appears in a letter dated September 19, 2015, more than 90 days after the Court of Appeals denied Defendant's appeal.  (*See* ECF No. 133-1, PageID.1442.)  In that request, he asserted that he needed the transcripts to prepare a motion under § 2255 but he could not afford to pay for them.  (*Id.* at PageID.1443.)  Defendant had no right to free transcripts in that context. *See*

Even if such a request existed, Defendant suffered no prejudice. His claim of alteration to the transcripts would not have aided his attempt to obtain a rehearing because that claim is completely unfounded. Moreover, a party generally may not assert new claims in a petition for rehearing. *See Costo v. United States*, 922 F.2d 302, 302-03 (6th Cir. 1990). Thus, Defendant's petition for a rehearing based on altered transcripts would have been futile. In other words, any failure by the Court to provide Defendant with transcripts was harmless.

**Ground Three:** **Ineffective Assistance of Attorney Fotieo**

In a statement of "supplemental issues," Defendant claims that the first attorney appointed to represent him, Deno Fotieo, provided ineffective assistance because he failed "to develop facts," conducted a "less than complete investigation," "ignored two letters of detailed questions for [the] forensic expert," refused to "share copies of my computer monitoring reports," "refused to hold [an] evidence hearing with me," failed to "compare actual screen captures," failed to obtain "available 'other' weekly reports," "failed to demand Rule 16 discovery," and "failed to confirm status of porn blocker."[9]   (Def.'s Suppl. Mem., ECF No. 153-1, PageID.1688.)   Defendant contends that he suffered prejudice by "failure to compare actual captures – none matched the images described in Jan. 16, 2012 government trial brief – if disclosed no waiver of speedy trial right[.]"  (*Id.*)

Defendant's allegations are vague and conclusory. They are not accompanied by facts that would suggest objectively unreasonable performance by counsel or prejudice to the outcome of

---

*United States v. Alcorn*, 10 F. App'x 248 (6th Cir. 2001) (no right to transcripts to search for "yet anasserted grounds" in a motion under § 2255); *Lucas v. United States*, 423 F.2d 683 (6th Cir. 1970) (affirming rule that "absent a special showing of necessity, an indigent prisoner is not entitled to a free transcript for the sole purpose of framing a motion under Section 2255") (citation omitted).

[9] Defendant apparently believed that his home computer had a "porn blocker that blocks porn," and that this would prove that he did not intend to receive or access child pornography.  (*See* 1/17/2012 Hr'g Tr. 19, ECF No. 59.)  It is clear from the evidence, however, that no such blocker existed.  Thus, there was nothing for his attorney to confirm. Moreover, Defendant's supposed belief that his home computer could not access pornography is belied by the fact that he repeatedly searched for it even after seeing it in the search results.

Defendant's proceedings.  For instance, Defendant does not explain any of the following:  what facts Fotieo left undeveloped, what was incomplete about Fotieo's investigation, what questions Fotieo ignored, or what the Rule 16 discovery and "other weekly reports" would have shown.  In other words, Defendant's assertions provide no basis for the Court to conclude that he received ineffective assistance of counsel.

Defendant contends that he faced "likely acquittal" on the initial charge of attempt to possess child pornography because "no attempts blocked and none saved/downloaded."  (*Id.*)  It is not clear what he means, but in any case, the jury convicted Defendant of attempted receipt and attempted access.  It did not convict him of attempted possession.  Defendant's contention that the evidence did not support attempted possession is conclusory and irrelevant.

To the extent Defendant contends that Fotieo was ineffective because he did not discover the Government's mistaken impression that the links from the monitoring software were screen shots, that claim is meritless because Defendant suffered no prejudice.  Defendant's trial attorney learned of that mistake before trial and the Government explained its mistake to the jury.  In other words, Defendant had plenty of opportunity to use that mistake for his benefit, the jury was aware of the mistake, and the jury convicted him anyway.  There is no reasonable probability that the result of his proceedings would have been different if Fotieo had discovered that mistake earlier.

**Ground Four: Ineffective Assistance of Attorney Samouris**

Defendant retained Peter Samouris to represent him after dismissing Fotieo as his attorney. Defendant claims that Samouris provided ineffective assistance in the following ways:  (1) he failed to file the motion to dismiss sooner; (2) he failed to "failed to compare the actual screen captures from my paid monitor with the seven images used to arrest me and deny me bond"; (3) he "refused to reask for [b]ond even after charge was dropped to 'intend' to commit a crime"; (4) he "failed to secure an accepted plea deal even though it was offered by the government"; (5) he failed

to obtain a "forensic expert" for trial; and (6) he "waived speedy trial rights again."  (Def.'s Suppl. Mem., PageID.1695.)

### A.  Failure to file motion to dismiss sooner

One of the claims that Samouris raised in his motion to dismiss the case is that he was ineffective for failing to file the motion to dismiss sooner.  Defendant and Samouris waited several months after discovering the Government's mistake regarding the screen shots before filing a motion to dismiss claiming that the Government withheld evidence.  This Court decided that the ineffective assistance claim was meritless because the "substantive claims" in the motion to dismiss were meritless.  (6/26/2013 Order Denying Mot. to Dismiss, ECF No. 90, PageID.475.) In other words, Defendant failed to show that "his counsel erred [or] that he was prejudiced by any error."  (*Id.*)  The Court's assessment of that issue today is no different than it was at the time of its order.

### B.  Failure to compare images

Defendant faults Samouris for failing to compare the seven images used to arrest Defendant with the images in the "captures" (screen shots) of Defendant's monitor.  (Def.'s Suppl. Mem., PageID.1695.)  Defendant contends that "zero captured images match the seven images in the government's trial brief." (*Id.*)  Defendant does not explain why his attorney's failure amounts to ineffective assistance of counsel.  To the extent Defendant is referring to the fact that the seven images of child pornography located on his computer did not appear in the screen shots, he does not explain how that information is relevant to the outcome of his proceedings.  The jury heard that information from Agent Babcock; nevertheless, it found Defendant guilty.

### C.  Refusal to "reask" for bond

Defendant believes that attorney Samouris should have asked the Court to reconsider Defendant's pretrial detention after a "charge was dropped to 'intend' to commit a crime";

Defendant contends that the charged offenses were not "crime[s] of violence" and Defendant was not a flight risk.  (*Id.*)

As a factual matter, Defendant's allegations are inconsistent with the record.  All the charges against Defendant in all the indictments involved both an attempt and an intent to commit a crime.  The Government did not "drop" the charges against Defendant from one sort of offense to a lesser one.  Thus, there was no reason for his attorney to raise the issue of pretrial detention; nothing changed over the course of the proceedings that was of any significance to that issue.

For similar reasons, a request for reconsideration of that detention would have been futile. When ordering Defendant's pretrial detention, the magistrate judge found that "[t]here is a serious risk that the defendant will endanger the safety of another person or the community."  (9/23/2011 Order of Detention, ECF No. 11, PageID.17.)   In particular, the magistrate judge noted that Defendant was on supervised release and was prohibited from viewing pornography when he committed the charged offense.  (*Id.*)

> Having been convicted of a sex-related offense, and while knowing his computer is subject to review, he has nevertheless engaged in further attempts to view pornography, either in direct derogation of the court's order or because his behavior is so compulsive he cannot stop doing it.  Clearly, issuing a further order to cease this behavior would be meaningless.  Only by placing the defendant in a facility where he has no access to computers can this behavior be stopped. . . .

(*Id.* at PageID.17-18.)

The minor changes to the indictments over the course of Defendant's case did not undermine the rationale for Defendant's pretrial detention.  He remained as much of a threat to the safety of the community on the day of his trial as he was on the day of his arrest.  Thus, a request for reconsideration would have been denied.  Defendant's attorney was not ineffective for failing to make a futile request.

56

Finally, as the Court noted above, any violation of Defendant's rights with respect to his pretrial detention is irrelevant in this matter.  At issue in the motion before the Court is whether Defendant is presently "in custody" in "violation of the Constitution or the laws of the United States."  28 U.S.C. § 2255(a).  His current confinement is based on his conviction and sentence. It is not based on his pretrial detention.  Thus, even a successful challenge to the legality of his pretrial detention would not entitle Defendant to relief.

### D.  Failure to secure a plea deal

Defendant blames his attorney for failure to secure an "accepted plea deal even though it was offered by the government."  (Def.'s Suppl. Mem., PageID.1695.)  Defendant is referring to the Government's offer to let Defendant plead to an obscenity charge.  (*See id.*)

As discussed above, Samouris communicated this offer to Defendant and then relayed Defendant's acceptance to the Government.  Shortly thereafter, the Government withdrew the offer because the U.S. Attorney's office would not accept it.  Defendant does not indicate what else his attorney could have done to "secure" this deal.  His ineffective assistance claim is meritless.

### E.  Failure to obtain a forensic expert

Defendant asserts that Samouris did not obtain a forensic expert for the trial scheduled for February 2013, causing Defendant to seek a continuance and waive his speedy trial rights.  The record indicates that Samouris diligently attempted to obtain an expert, but his efforts failed.  On February 4, 2013, he informed the court that "Defendant's hired expert, without any prior notice, terminated his relationship with Defendant and defense counsel on January 31, 2013."  (Def.'s Mot. for 90-day Continuance, ECF No. 61, PageID.302.)  Samouris had been working with that expert since the fall of 2012, but the expert unexpectedly terminated his relationship.  (*Id.*, PageID.303.)  According to Samouris' affidavit in these proceedings, the expert was reluctant to go to trial because he had "concluded that he would not be helpful."  (Samouris Aff., ECF No.

57

180, PageID.2064.)  Consequently, Samouris asked the Court to delay the trial date for 90 days so that Defendant could procure another expert.  (Def.'s Mot. for 90-day Continuance, PageID.304.) Despite Samouris's attempts, he "could not find an expert who would be helpful for Defendant at trial[.]"  (Samouris Aff., PageID.2064.)

Once again, Defendant does not indicate what his attorney should have, or could have, done differently.  Samouris's request to delay the proceedings was reasonable in light of the circumstances.  Defendant clearly wanted an expert; there is no indication that Samouris could have obtained another expert in time for the trial scheduled for February 12, 2013.  Thus, Defendant has not shown that his attorney's performance was unreasonable.

Moreover, Defendant has not shown that he was prejudiced by Samouris's failure to procure an expert.  He has not shown that the assistance or testimony of an expert would have aided his case.  It is not sufficient for Defendant to "simply state" that the testimony of an expert "would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("Speculation cannot suffice to establish the requisite prejudice."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").  The Court is not required to engage in "unguided speculation into the value of omitted testimony by hypothetical witnesses."  *United States v. Holt*, No. 95-5173, 1996 WL 262466, at *9 (6th Cir. May 15, 1996).  Unguided speculation is all that Defendant offers here.

In summary, Ground Four is meritless.

**Ground Five:** **Ineffective Assistance of Attorney Turek**

Defendant claims that his trial attorney, Sharon Turek, provided ineffective assistance of counsel for the following reasons:  (1) she failed to object to "all the trial issues listed [in his motion under § 2255]"; (2) she failed to "develop" Defendant's "theory of the case" and conducted a "less than complete investigation"; (3) she did not request a forensic expert to appear at trial; (4) she did not ask for a *Daubert* hearing; (5) she did not object to the "knowingly" element of the jury instructions; (6) she did not object to the Government showing the jury "unviewed illegal images," including "twice during closing arguments"; (7) she failed to object to the "misstated facts and false testimony specifically chapter five homework"; (8) she was aware of an email stating "chapter 4 was the last reported homework yet failed to object until after AUSA badgered" Defendant; (9) she did not object to Defendant being called a "liar" by the prosecutor; (10) she did not file a motion for mistrial based on "misstated evidence during trial"; and (11) she refused to answer "repeated sentencing questions."  (Def.'s Suppl. Mem., PageID.1696-1697.)

### A.  Failure to object to "trial issues"

The Court has already discussed all the "issues" raised by Defendant regarding his trial and explained why they are meritless.  The Court will not repeat that analysis here.  Suffice it to say that his attorney was not ineffective because any objections to those issues would have been fruitless.

### B. Failure to develop Defendant's theory of the case and to conduct a complete investigation

Defendant's assertions that Turek did not develop his "theory of the case" or conduct a "complete investigation" are conclusory and unsupported.  She did, in fact, present Defendant's theories about his innocence.  For instance, in her closing argument, she questioned the credibility of Babcock and Wallock because Babcock initially gave the grand jury the wrong information

about the evidence that he obtained from the monitoring software.  (Trial Tr. III at 489-91.)  Turek also noted that Defendant did not click on any of the search results, visit any pornographic websites, or download any files containing child pornography.  (*Id.* at 491.)  She argued that the Government could not prove with "a hundred percent certainty" that Defendant had viewed any of the images of child pornography on his computer.  (*Id.*)  And she argued that Defendant did not intend to commit the charged crimes because he was simply following the instructions in his court-mandated homework and he thought that his computer would block any pornography.  (*Id.* at 494, 496.)  All of her arguments were supported by evidence presented at the trial.  Defendant does not indicate what else she should have done by way of investigation or development of the case that would have made any difference to the outcome.

### C.  Failure to request a forensic expert

Defendant's claim that Turek failed to request a forensic expert does not demonstrate ineffective assistance of counsel because Defendant does not indicate how such an expert would have aided his case.  Turek contends that she consulted a computer forensic expert, but she "concluded that an expert would not help [Defendant], so [she] did not call one as a witness at trial."  (Turek Aff., ECF No. 175, PageID.2027.)  Defendant offers no valid reason to question that decision.

Defendant contends that the Government's expert "failed to share very important items regarding the knowingly element of the charges."  (Def.'s Suppl. Mem., PageId.1696.)  He asks, "What if a third expert knew of automatic-caching?"  (*Id.*)  However, the Government's expert was aware of that concept, as was the jury.  Babcock explained to the jury that an internet browser automatically stores images to the computer's temporary storage folder, including images that the user may not have seen.  (Trial Tr. II at 275, 329, 332.)  Calling a defense expert to explain the

same concept would have been pointless.  In short, Defendant does not point to any helpful information a defense expert could have provided that was not presented to the jury.

### D.  Failure to request a *Daubert* hearing

Defendant asserts that Turek did not request a *Daubert* hearing, but Defendant does not indicate how that failure prejudiced him.  As the Court explained in Ground One, Section M, Defendant does not point to anything that rendered Babcock's opinion testimony inadmissible under the *Daubert* standard.  Thus, a *Daubert* hearing was unnecessary.

### E.  Failure to raise particular objections during and after trial

Turek raised a number of objections throughout the trial (*see, e.g.,* Trial Tr. II at 232, 236, 421), and argued that the Court should dismiss the charges under Rule 29 because the Government failed to meet its burden of proof (*id.* at 340).  Nevertheless, Defendant contends that Turek was ineffective because she failed to raise a number of other objections, both during trial and in a post-trial motion for a mistrial.  For instance, Defendant contends that she failed object to the "knowingly" element of the jury instructions, to "misstated facts and false testimony," and to "misstated evidence."  As the Court explained in connection with Ground One, above, there was no basis for an objection on any of these grounds.  Contrary to Defendant's assertions, the jury instructions were correct.  Moreover, Defendant has not shown that the Government misstated the facts or the evidence, or that it presented false testimony.  Thus, these objections would have been futile.

Defendant also asserts that Turek should have objected to the prosecutor calling him a liar, but for reasons already explained, there is no evidence that this occurred, and even if it did, Defendant has not shown that he was prejudiced by the lack of an objection.

Defendant also contends that Turek should have objected to the prosecutor showing the jury "unviewed images."  Defendant does not explain the basis for an objection.  Indeed, the

Government's evidence indicated that Defendant saw the images in his search results, including the images on his computer. It was not improper for the prosecutor to show these images to the jury. They were relevant and they were not unfairly prejudicial.

Defendant contends that there is an email "stating chapter 4 was the last reported homework," yet Turek failed to object. (Def.'s Suppl. Mem., PageID.1697.) It is not clear what this means or why it has any relevance to Defendant's conviction. Defendant told the jury that the last chapter of homework that he reported to his therapy class was from chapter 4 of his workbook. (Trial Tr. III at 438.) The Government never contended otherwise. Defendant provides no basis for a valid objection.

In summary, Defendant has not shown that the failures to object were professionally unreasonable or that they prejudiced Defendant. In other words, he has not shown that counsel's assistance was ineffective.

### F.  Refusal to answer questions about sentencing

Turek allegedly refused to answer Defendant's questions about sentencing. Turek states that she "attempted to answer all of [Defendant's] questions" but he "did not agree with the answers I provided him." (Turek Aff., PageID.2027.) Defendant does not explain how the failure to answer his questions prejudiced him in any way. He does not identify the questions that he asked, the information he expected, or what any of that has to do with the sentence he received. Thus, his ineffective assistance claim is unsupported.

In summary, Defendant's claims about the ineffective assistance of his trial attorney are meritless.

<u>**Ground Six:**</u> **Ineffective Assistance of Court Provided Expert Adam Kelly**

Defendant contends that he paid $7,500 for a "replacement forensic investigator" because the "Court supplied" investigator, Adam Kelly, was ineffective. (Def.'s Suppl. Mem.,

PageID.1698.) Fotieo is the attorney who retained Kelly to assist with Defendant's case. According to Defendant, Kelly did not provide any forensic reports to Fotieo. Also, Kelly allegedly refused to answer questions that Fotieo gave him, and did not ask to see the "actual screen captures" from the monitoring software to compare them to the "seven images shown the court [that] were captured by [Defendant's] monitor." (*Id.*) Defendant believes that an effective investigation would have "exposed" a "lie" in the Government's evidence, leading to Defendant's "likely acquittal" of the charge of attempting to possess child pornography. (*Id.*)

Defendant fails to cite any authority supporting a right to effective *expert* assistance, and the Court is not aware of any. Courts have held that there is no such right. *See, e.g.*, *Wilson v. Greene*, 155 F.3d 396, 401 (4th Cir. 1998) ("The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness."); *Harris v. Vasquez*, 949 F.2d 1497, 1518 (9th Cir. 1990) (rejecting rule that courts in a federal habeas proceeding must determine whether a defense expert "'competently' assisted the defense"); *Silagy v. Peters*, 905 F.2d 986, 1013 (7th Cir. 1990) (refusing to conduct a "'competence' review" of a court-appointed expert in a criminal proceeding); *Waye v. Murray*, 884 F.2d 765, 767 (4th Cir. 1989) ("To inaugurate a constitutional or procedural rule of an ineffective expert witness in lieu of the constitutional standard of an ineffective attorney, we think, is going further than the federal procedural demands of a fair trial and the constitution require."); *see also Lundgren v. Mitchell*, 440 F.3d 754, 772 n.5 (6th Cir. 2006) ("Petitioner does not have a constitutional right to an expert whose conclusions favor Petitioner."). Thus, the legal premise for Defendant's claim has no foundation.

Even if there were such a right, Defendant's claim would fail. Kelly asserts that he reviewed Babcock's expert reports and the reports from the monitoring software. He also conducted his own analysis of Defendant's computer. (Kelly Aff., ECF No. 178, PageID.2044.)

Among other things, he "found no exculpatory digital forensics evidence." (*Id.*)  He relayed his findings to Fotieo.  In other words, like the expert that Defendant retained to replace Kelly, Kelly was unable to provide testimony or evidence that would aid Defendant's case.

Defendant apparently believes that he would have been acquitted if Kelly had discovered Wallock and Babcock's mistaken assessment of the screen shots, but that is pure speculation. Defendant learned about that mistake before his trial and his attorney used it to question the credibility of the Government's witnesses.  There is no reason to think that the result of Defendant's trial would have been any different if he had discovered those mistakes earlier.

In summary, Ground Six, like all the other grounds for relief, is meritless.

## IV.  Conclusion

Much of Defendant's motion rests upon a mistaken belief that the Government did not prove its case.  However, that issue has been settled.  The Court of Appeals made clear that the Government provided sufficient evidence to prove, beyond a reasonable doubt, that Defendant is guilty.  Furthermore, all the defenses that Defendant raises here—he did not look at the images on his screen, he did not click on any images or links in the search results, he was dutifully completing his court-mandated homework, he thought there was a filter on his computer, the screen shots of his computer do not show child pornography, the computer automatically stored the images of child pornography in his temporary internet folder, and the Government made a mistake in its initial assessment of the evidence—were presented to the jury.  The jury did not accept them.  The Court discerns no reason to upset that decision.  The Government did not deny Defendant of a fair trial or impair his ability to present his case.  Moreover, there is no indication that Defendant's trial or appellate attorneys deprived him of the effective assistance of counsel.

In summary, after considering Defendant's motion under § 2255 and supplements thereto, the Court finds that the grounds for relief are meritless. In addition, no evidentiary hearing is warranted because the motion, files, and records of the case conclusively show that Defendant is not entitled to relief. Consequently, the Court will deny the motion under § 2255.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under *Slack*, to warrant a grant of the certificate, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

The Court has carefully considered the issues under the *Slack* standard and concludes that reasonable jurists could not find that this Court's denial of Defendant's claims was debatable or wrong. Accordingly, the Court will deny a certificate of appealability.

An order and judgment will enter consistent with this Opinion.

Dated:   June 8, 2020                              /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge